UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ZACHARY CARSON DIETZ, | **4:23-CV-04158-ECS** |
| Plaintiff, | |
| vs. | **OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING** |
| KOLIN FINK, Attorney at Meyers Billion Law Firm; KATIE JOHNSON, Attorney at Katie Johnson Law; SAM NELSON, Attorney at Law Firm in Beresford, SD; NICHOLE GRIESE, Attorney at Griese Law - Sioux Falls; HILLARY OHNNAN[1]; JUDGE RACHEL RASMUSSEN[2]; DENNIS MILLER; and EAST RIVER LEGAL SERVICES, | |
| Defendants. | |

Plaintiff, Zachary Carson Dietz, a former inmate at the Yankton Community Work Center,[3] filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1 at 1. Dietz also moved for leave to proceed in forma pauperis and attached his prisoner trust account report. Docs. 2, 3.

---

[1] Throughout his complaint, Dietz spells the defendant's last name as Ohnnan, Onnan, and Ohnan. Doc. 1 at 7; Doc. 1-1 at 1–2, 7, 11, 15. Because Dietz spells the defendant's name as Ohnnan when naming her as a defendant, this Court adopts that spelling.

[2] Throughout his complaint, Dietz spells the defendant's last name as Rasmussen, Rasmusson, and Rassmusen. Doc. 1 at 5, 7; Doc. 1-1 at 1–2, 11, 22. This Court will refer to the defendant by the correct spelling of her last name: Rasmussen. See S.D. Unified Jud. Sys., Second Judicial Circuit, https://ujs.sd.gov/Second_Circuit/Default.aspx (last visited Dec. 3, 2024).

[3] At the time Dietz filed his complaint and his motion for leave to proceed in forma pauperis, he was incarcerated at the Yankton Community Work Center. Doc. 1 at 1. Dietz has since been released on work release to the St. Francis House, in Sioux Falls, South Dakota. Doc. 6. See also Offender Locator, S.D. Dep't of Corr., https://doc.sd.gov/adult/lookup/ (last visited Dec. 11, 2024) [hereinafter Offender Locator].

## I.    Motion for Leave to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act (PLRA), a prisoner[4] who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

(A) the average monthly deposits to the prisoner's account; or
(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Dietz reports average monthly deposits of $48.49 and an average monthly balance of $27.56.

Doc. 3 at 1. Based on the information regarding Dietz's prisoner trust account, the Court grants

---

[4] The South Dakota Department of Corrections Offender Locator indicates that Dietz has been released to the St. Francis House but also indicates that he is an active inmate. Offender Locator. Under 28 U.S.C. § 1915(h), the term "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." The Fifth Circuit Court of Appeals held that an inmate released to a halfway house as a condition of mandatory supervision qualified as a prisoner for 28 U.S.C. § 1915(h). See Jackson v. Johnson, 475 F.3d 261, 267 (5th Cir. 2007) (per curiam) ("Even if [plaintiff's] time at the halfway house is for primarily non-punitive purposes, he is nonetheless a 'prisoner' within § 1915(h)'s definition because his confinement is as a result of his criminal violation."). While this Court is not obligated to follow decisions of other jurisdictions, this Court found Jackson persuasive to determine that a prisoner was subject to the PLRA requirements when released to a halfway house as part of the plaintiff's sentence. See Red Bear v. Corr. Med. Mgmt., LLC, 4:23-CV-04127-KES, 2023 WL 9051243, at *1 n.1 (D.S.D. Dec. 29, 2023). Because Dietz was a prisoner at the time he filed his complaint and is an active inmate at a transitional housing facility, this Court considers Dietz as a prisoner under 28 U.S.C. § 1915(h), which subjects him to the fee requirements for prisoners under 28 U.S.C. § 1915(b).

Dietz leave to proceed in forma pauperis and waives his initial partial filing fee because the initial partial filing fee would be greater than his current balance. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Dietz must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id. The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Dietz's institution.[5] Dietz remains responsible for the entire filing fee, as long as he is a prisoner. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.    1915A Screening

### A.    Factual Background

Dietz claims that defendants violated his rights during his state criminal proceedings and probation revocation hearings. See generally Doc. 1; Doc. 1-1. Dietz alleges that beginning in 2001 and continuing throughout the past twenty-plus years, he has "suffered, struggled and been

---

[5] Courts have required agencies, including halfway houses, that housed plaintiffs proceeding in forma pauperis to collect installments of initial filing fees when the resident plaintiffs were classified as prisoners under the PLRA. See Red Bear, 2023 WL 9051243, at *2 n.2 (collecting cases).

forced into servitude by child support." Doc. 1 at 6 (capitalization in original omitted).  See also Doc. 1-1 at 14, 25–26.  Dietz claims that he was required to live well below minimum wage because of child support garnishments, which caused him to "make a bad decision out of frustration and counterfidted [sic] video lottery tickets for [his] own enrichment." Doc. 1 at 6 (capitalization in original omitted).  Sam Nelson was Dietz's attorney during his appeal of his conviction for forgery and manipulating the outcome of a video lottery machine in Union County, but Dietz claims that Nelson only made arguments or cited to case law that was favorable to the State.  Doc. 1-1 at 10–11.  Dietz also alleges that Nelson and his father were active in the South Dakota Legislature; Dietz claims this shows Nelson's father was involved with the approval of video lottery machines, despite Dietz believing that video lottery is unconstitutional.  Id. at 11.

In February 2021, Dietz violated his concurrent probation, and Hillary Ohnnan, Dietz's probation officer, charged him with a new felony for alteration of a registration card.  Id. at 1. Dietz claims that he later argued the statute he was accused of violating was unconstitutional because it contained more than one subject.  Id.  Lincoln County revoked Dietz's probation, and he was granted a personal recognizance bond during his initial appearance.  Id.  On the same day, Union County Prosecutor Jerry Miller[6] issued a no bond warrant for the violation.  Id. at 1, 11–12.  On April 21, 2021, Dietz was sentenced in Lincoln County and Union County without a presentence investigation.  Id. at 7.  On June 25, 2021, Dietz was released from the Union

---

[6] Dietz sues Dennis Miller for alleged violations of his Eighth Amendment right to be free from cruel and unusual punishment because of improper indictments and denial of bonds. Doc. 1-1 at 2.  Dietz, however, states that Jerry Miller was the prosecutor for his probation violation.  Id. at 11–12.  For the purposes of screening, this Court assumes that Dennis Miller and Jerry Miller are the same person.

County Jail; he was placed on concurrent probation in Lincoln County and Union County.[7] Id. at 1, 7. The State issued a bill of attainder permanently revoking Dietz's driver's license, and Dietz began to abscond his probation because he felt it was unfair. Id. at 12, 25.

In August 2021, Dietz asked his court-appointed attorneys—Nicole Griese, Katie Johnson, and Nelson—for assistance with removing his allegedly illegal child support obligations, but Griese, Johnson, and Nelson declined because child support was beyond their scope of duty. Id. at 15. See also id. at 7 (indicating that Dietz had discussed child support at times with all of his attorneys: Johnson, Griese, Nelson, and Kolin Fink). Dietz also sought to resolve his child support issues with Ohnnan, but she declined and violated his probation for absconding. Id. at 15. In January 2022, Dietz applied for assistance from East River Legal Services (ERLS), seeking assistance with an administrative hearing before the Department of Social Services Division of Child Support in order to reinstate his driver's license; ERLS declined to represent Dietz because his case involved child support. Id. Dietz claims that the State Bar of South Dakota contracts with the Department of Social Services, which allegedly creates a conflict of interest with attorneys and prevents Dietz from securing representation by counsel.[8] Id. at 16–17, 19–20.

While Dietz was absconding his probation and driving with a revoked license, he did a contract job for Chris Mottz. Id. at 12. Dietz learned that Mottz was a lawyer and informed Mottz of his situation. Id. Mottz allegedly wanted Dietz to meet him at his office to discuss Dietz's situation, but Dietz "declined in fear of the law." Id. (capitalization in original omitted).

---

[7] The presentence investigation allegedly occurred after sentencing, during Dietz's first meeting with Ohnnan. Doc. 1-1 at 7, 9.

[8] Dietz also claims that the State Bar of South Dakota and the United States Supreme Court approved Title IV-D of the Social Security Act for Congress and that there was a cooperative arrangement created in Title IV-D. Doc. 1 at 6; Doc. 1-1 at 19.

Dietz continued to speak with Mottz, emailed him about his issues with video lottery, and forwarded him emails from Johnson, Nelson, and his caseworker about child support concerns. Id.  When Dietz said that his concerns related to child support, all communication with Mottz allegedly stopped. Id. at 13.  Dietz believes that Mottz communicated with Nelson because Mottz, Nelson, and his later court-appointed attorney, Kolin Fink, are all in the National Guard together. Id.

In March 2023, Dietz was apprehended for violating his probation because he was driving after his driver's license had been revoked. Id. at 1.  Dietz claims that his sentence was unfair because he "refuse[d] to be punished for supporting [him]self (driving)." Id. (capitalization in original omitted).  He was incarcerated in Union County from March 14, 2023, through April 26, 2023. Id. at 4.  After Dietz was taken into custody at the Union County Jail, Katie Johnson was appointed as his attorney; on March 16, 2023, Johnson mailed Dietz a letter explaining his rights in his probation violation case. Id. at 13, 18, 24.  Dietz requested that Johnson subpoena court services and urinalysis results. Doc. 1 at 4.  In Union County, Judge Tami Bern, a circuit judge in South Dakota's First Judicial Circuit, sentenced Dietz to forty-eight months' incarceration with thirty months' suspended. Doc. 1-1 at 1.  Dietz claims that his probation was revoked prior to having a hearing and that he went from March 14, 2023, through August 14, 2023, without a hearing. Id. at 4, 10; Doc. 1 at 4.  But see Doc. 1-1 at 6 ("The only hearings [Dietz] had from 3-14-23 [to] 8-14-23 were a bond hearing and sentencing, both [he] requested." (capitalization in original omitted)).

When Dietz arrived at the Yankton Community Work Center on May 28, 2023, he contacted his court-appointed attorney, Kolin Fink, and requested a bond hearing. Doc. 1-1 at 4, 10.  On June 15, 2023, Dietz received a bond hearing and was charged with a new felony for

alteration of a registration card, which had a $500 cash bond, and probation violations for two forgery felonies. Id. at 4. The next day, Fink contacted Dietz with a plea deal of five years with time suspended; Dietz was unable to recall the exact time suspended, but he claims that it would have totaled another year in prison. Id. at 4–5. Dietz neither accepted nor denied the plea deal, and he alleges that he never heard from Fink again. Id. at 5.

Dietz sent Fink a letter claiming that SDCL § 32-5-103.1 was unconstitutional because it embraced more than one subject. Id. at 5, 28–30. Dietz called Fink a week later and asked about the letter; Fink said that he made progress and that the State agreed to dismiss the charge against Dietz if he pled guilty to probation violations. Id. at 5. Dietz agreed to the plea deal and tried, unsuccessfully, to have his $500 cash bond paid so he could be released on August 15, 2023. Id. Dietz told Johnson that he felt the prosecution in both counties was unfair because it violated his right to due process, but Johnson allegedly replied "that[']s what they do!" Id. at 11–12 (capitalization in original omitted).

Dietz claims that despite his requests, Fink refused to send him copies of his case file and failed to inquire or investigate his background and character. Id. at 23; Doc. 1 at 4. Dietz spoke with Fink about his depression and oppression from child support and requested Fink recommend a mental health evaluation to benefit his sentencing. Doc. 1-1 at 6. Fink allegedly did not take any time to prepare Dietz for his sentencing. Id. at 10. Dietz sent a letter to Fink including a copy of his complaint from his prior lawsuit, Dietz v. Dep't of Soc. Servs. Child Support, 4:23-CV-04114-RAL (D.S.D.), to prove that he was serious about child support violating his rights. Doc. 1-1 at 5. In his letter to Fink, Dietz also questioned Fink's effectiveness and claimed that Fink had a conflict of interest with child support because he

practiced family law.  Id. at 5–6.  Dietz also claims that Fink provided ineffective assistance because he is close friends with Nelson and Mottz.  Id. at 10.

On August 14, 2023, in Lincoln County, South Dakota, Judge Rachel Rasmussen, a circuit judge with South Dakota's Second Judicial Circuit, sentenced Dietz to five years' incarceration without any suspended for his first probation violation.  Id. at 6; Doc. 1 at 5.  Dietz claims that the revocation occurred without a hearing and that his sentence was retaliation for filing a lawsuit against the South Dakota Department of Social Services Division of Child Support.  Doc. 1 at 5.  During the sentencing, Fink only requested that the state court suspend Dietz's sentence and then told Dietz to explain the rest, despite Fink allegedly not taking the time to prepare or advise Dietz prior to the sentencing.  Doc. 1-1 at 10.  When Dietz began to explain, he stated that he had filed a lawsuit against the State of South Dakota and said that his "probation officer forced [him] to drive when she knew [he] had no license."  Id. (capitalization in original omitted).  During the sentencing, Judge Rasmussen allegedly told Dietz that she understood his frustration with child support, despite the fact that Dietz claims to have never informed Judge Rasmussen about his lawsuit.  Doc. 1 at 5.  Dietz had previously sent a copy of his lawsuit to Fink; Dietz believes that Fink told Judge Rasmussen that Dietz is blaming child support for his problems, which he believes prejudiced him.  Id.

Dietz sues Fink, Johnson, Nelson, and Griese in their individual and official capacities. Doc. 1 at 2.  Because Dietz does not specify if he sues Ohnnan, Judge Rasmussen, Miller, and ERLS in their individual or official capacities, he sues them in only their official capacities.  See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Artis v. Francis Howell N. Band Booster Ass'n Inc., 161 F.3d 1178, 1182 (8th Cir. 1998)) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously

state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."). Because of defendants' actions, Dietz claims to have suffered extreme psychological and emotional pain. Doc. 1 at 5. He also claims to have lost his pet, his belongings, and his business. Id. He further alleges that he does "not deserve to be in prison for the next 5 years because the State has violated [his] rights[.]" Id. at 7 (capitalization in original omitted).

He requests that this Court review how the Lincoln County Court and the Union County Court "have made no attempts to even inquire in to [sic] [his] life, [his] allegations of having [his] rights violated, performed no investigations no due process hearings." Id. (capitalization in original omitted). See also Doc. 1-1 at 32 (asking this Court to investigate alleged fraud caused by the State of South Dakota for incentive payments under 42 U.S.C. § 658). He also requests the Court investigate "the relationships and negative ex-parte communications . . . between – Judge Rachel Rasmussen – cruel sentancing [sic] Hillary Ohnan – probation" because he believes that Judge Rasmussen and Ohnnan "work too closely together creating biased prejudice Kolin Fink & Prosecutor Nelson are all one unit[.]" Doc. 1 at 7 (capitalization in original omitted). He also claims that he is submitting evidence to this Court "seeking relief from judgement [sic] [.]" Doc. 1-1 at 37 (capitalization in original omitted).

B.      **Legal Background**

The court must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin

9

v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).  If it does not contain these bare essentials, dismissal is appropriate.  See Beavers v. Lockhart, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations).  Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation and footnote omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 554–63)).

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  The court will now screen Dietz's complaint under 28 U.S.C. § 1915A.

**C.    Legal Analysis**

Dietz generally alleges that several statutes are unconstitutional.  This Court will analyze separately each individual claim for which he alleges a statute is unconstitutional.

On Dietz's claims for violation of his rights, he only requests the following relief: (1) that this Court investigate the practices of the Lincoln County Court and the Union County Court

used during his probation and sentencing and (2) that this Court investigate the relationships and "negative ex-parte communications" between the defendants during his state proceedings. Doc. 1 at 7 (capitalization in original omitted). He also clearly states that he is submitting evidence to the courts "seeking relief from judgement [sic]." Doc. 1-1 at 37 (capitalization in original omitted). This Court is not able to award the relief requested under § 1983. Even if this Court permitted Dietz to amend his complaint to request relief that this Court could grant, his complaint would still be dismissed because he has failed to state a claim upon which relief may be granted.

### 1.    **Rooker-Feldman** Doctrine

Dietz alleges numerous claims requesting review of his state-criminal proceedings: First Amendment retaliation during sentencing because he filed a prior lawsuit about child support, Fifth Amendment right to be free from double jeopardy, Sixth Amendment ineffective assistance of counsel, Eighth Amendment cruel and unusual punishment for his sentence in Lincoln County, Fourteenth Amendment due process for not providing hearings prior to revoking his probation, Fourteenth Amendment due process for not providing a presentence investigation prior to sentencing, and Fourteenth Amendment equal protection. Doc. 1 at 5–7; Doc. 1-1 at 1, 3–4, 7–10, 13, 18, 25.

His claims requesting review of his state proceedings are barred by the Rooker-Feldman[9] doctrine. "The Rooker-Feldman doctrine prohibits lower federal courts from exercising appellate review of state court judgments." Skit Intern., Ltd. v. DAC Techs. of Ark., Inc., 487 F.3d 1154, 1156 (8th Cir. 2007) (citations omitted). "The Rooker-Feldman doctrine bars both

---

[9] Rooker v. Fid. Tr. Co., 263 U.S. 413, 416 (1923); D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 482 (1983).

straightforward and indirect attempts by a plaintiff to undermine state court decisions. Litigants may not pursue federal claims with allegations that are inextricably intertwined with a state court decision." Prince v. Ark. Bd. of Exam'rs in Psych., 380 F.3d 337, 340 (8th Cir. 2004) (internal citations omitted). Thus, Dietz's claims requesting review of practices of the Lincoln County Court and the Union County Court in his proceedings are barred under the Rooker-Feldman doctrine and dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

However, the Rooker-Feldman doctrine would not deny federal district courts "jurisdiction over constitutional challenges to a state statute which would not require review of [a] state court judgment." Beach v. Minnesota, 2003 WL 21488679, at *4 (D. Minn. June 25, 2003) (citing Postma v. First Fed. Sav. & Loan, 74 F.3d 160, 162 n.3 (8th Cir. 1996)), aff'd by 92 F. App'x 386 (8th Cir. 2004) (per curiam). Thus, this Court will screen Dietz's challenges to statutes that do not require review of his state-court judgment.

### 2. Constitutional Challenges

#### a. Federal Statutes

Dietz appears to allege that Title IV-D of the Social Security Act is unconstitutional because it has incentive payments to states for collecting child support.[10] Doc. 1-1 at 13–14.

---

[10] Dietz attempts to cite to Owens v. Zucker as support, but he does not provide a case number or any other citation information for this Court to locate the case. See Doc. 1-1 at 13. This Court attempted to research the case but only found cases originating from the United States District Court for the Middle District of Florida; all of these cases were dismissed because the complaints were frivolous, baseless, or incomprehensible ramblings and because what the court could comprehend was precluded by Younger v. Harris, 401 U.S. 37 (1971). See Owens v. Zucker, 2018 WL 11177003 (M.D. Fla. May 31, 2018); Owens v. Zucker, 2018 WL 11176996 (M.D. Fla. Apr. 26, 2018). An appeal to the United States Court of Appeals for the Eleventh Circuit was also dismissed because defendants were not state actors suable under § 1983, and Younger abstention precluded the court from intervening in petitioner's ongoing state child custody and child support hearings. Owens v. Zucker, 2018 U.S. App. LEXIS 31474 (11th Cir. Nov. 6, 2018). Thus, this Court is unable to determine any basis for a constitutional challenge arising from Dietz's reference to Owens v. Zucker.

Dietz claims that this is unconstitutional, but his allegations are unclear.  See generally id.
Further, he does not challenge the statute under any specific constitutional provision.  Dietz
frequently claims throughout his complaint that actions violate the due process clause, but it is
unclear if he is raising a constitutional challenge to this statute on those grounds.  See generally
id.  Thus, his allegations are too vague to allege a constitutional challenge, and his claim is
dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

 He also claims that 42 U.S.C. § 658 is unconstitutional because it provides incentive
payments to political subdivisions for collecting child support.  Doc. 1-1 at 17 (citing Quarles v.
St. Clair, 711 F.2d 691 (5th Cir. 1983)).  However, § 658 was repealed in 2001.  Current law, 42
U.S.C. § 658a, provides for incentive payments for collection of child support, but if Dietz
wishes to raise a constitutional challenge to provisions in § 658a, he must clearly identify which
provisions and specify what constitutional provision the statutory provisions allegedly violate.
Thus, Dietz's constitutional challenge to § 658 is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii)
and 1915A(b)(1).

 Dietz also generally claims that several provisions in Title IV-D are unconstitutional
because they are ex-post facto laws and bills of attainder.  Doc. 1-1 at 19, 25.  However, he does
not clearly identify which provisions he believes are unconstitutional for these reasons.  Thus, he
has failed to allege a constitutional challenge that can survive § 1915A screening, and his claim
is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b. State Statutes

 Dietz appears to allege that video lottery is unconstitutional despite the adoption of South
Dakota Constitution Article III § 25, which permits the Legislature to authorize video lottery
games that are regulated by the State of South Dakota.  See Doc. 1-1 at 11.  He claims the

constitutional amendment does not make video lottery legal. Id. Aside from this general allegation, Dietz provides no specific basis for his constitutional challenge. See id.

Dietz appears to allege that SDCL § 32-11-116—the statute he claims governs the suspension of a driver's license for child support arrearages—is unconstitutional because he was not provided due process before his driver's license was suspended. Doc. 1-1 at 25. However, the section he cites to does not exist in the South Dakota Code. This Court assumes that Dietz intended to cite to SDCL § 32-12-116, which addresses restrictions on issuing a license to persons in arrears for child support. Even so, he does not appear to allege that the specific statute is unconstitutional; instead, he appears to allege that he was denied a hearing as prescribed under SDCL § 32-12-116. See Doc. 1-1 at 25. For these reasons, Dietz's claims attempting to challenge the constitutionality of South Dakota statutes are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Dietz also claims that SDCL § 32-5-103.1 violates Article III § 21 of the South Dakota Constitution, which states that "No law shall embrace more than one subject which shall be expressed in its title." See also Doc. 1-1 at 1, 5, 28–30. Dietz's claim that a South Dakota law violates the South Dakota Constitution does not confer federal jurisdiction. Because all of Dietz's other claims do not survive § 1915A screening, this Court declines to exercise supplemental jurisdiction over this claim, and his claim is dismissed without prejudice. See 28 U.S.C. § 1367(c)(3) (noting that district courts may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction").

### 3.    Dietz's Other Claims

Even if this Court granted Dietz leave to amend his complaint to request a remedy this Court could grant, such action would be futile because Dietz has failed to state a claim upon which any type of relief may be granted.

### a.    Claim Under 18 U.S.C. § 42

Dietz alleges a claim arising under 18 U.S.C. § 42 for defendants' failure to intervene in his child support obligations and wage garnishments. Doc. 1 at 6. However, § 42 is a federal criminal statute, which applies to the "[i]mportation or shipment of injurious mammals, birds, fish (including mollusks and crustacea), amphibia, and reptiles[.]" 18 U.S.C. § 42. Even if this section was relevant, it does not provide a private right of action. See Germeten v. Planet Home Lending, LLC, 2018 WL 1054404, at *2 (E.D. Wis. Feb. 26, 2018). Thus, Dietz fails to state a claim under 18 U.S.C. § 42.[11]

### b.    Claim Under 42 U.S.C. § 666

Dietz claims that 42 U.S.C. § 666 was violated because his income was withheld without all procedural due process requirements of the State of South Dakota. Doc. 1-1 at 26. To allege a claim based on this federal statute, Dietz "must show that this statutory grant of authority both created an individual right and gave private plaintiffs the ability to enforce it." Wells v. Creighton Preparatory Sch., 82 F.4th 586, 593 (8th Cir. 2023) (citing Alexander v. Sandoval, 532 U.S. 275, 286 (2001)). Other courts have held that 42 U.S.C. § 666 does not create a private cause of action. See Mosier v. AG of Tex., 2014 U.S. Dist. LEXIS 181406, at *4 (W.D. Ark.

---

[11] This Court assumes that Dietz intended to cite to 18 U.S.C. § 242, which applies to deprivations of rights under color of law. Even so, § 242 is a federal criminal statute, which does not provide a private right of action. United States v. Wadena, 152 F.3d 831, 846 (8th Cir. 1998). Thus, had Dietz alleged a claim arising under 18 U.S.C. § 242, it would fail to state a claim upon which relief may be granted.

Nov. 17, 2014) <u>R. & R. adopted by</u> <u>Mosier v. AG of Tex.</u>, 2015 WL 417984, at *1 (W.D. Ark.

Jan. 30, 2015); <u>Cutts v. Berry</u>, 2006 WL 8459116, at *3–4 (E.D. Mo. Oct. 19, 2006).  And Dietz

has pointed to no authority to the contrary.  Thus, he has failed to establish a private right of

action under 42 U.S.C. § 666 and therefore fails to state a claim under 42 U.S.C. § 666.

<b>c.      Claims Against Fink, Johnson, Nelson, Griese, and ERLS</b>

Dietz sues Fink, Johnson, Nelson, and Griese, who are private attorneys in South Dakota,

and ERLS, which is a private nonprofit legal office.  Doc. 1 at 2; Doc. 1-1 at 2.  Claims under

§ 1983 may only be brought against state actors.  <u>Carlson v. Roetzel & Andress</u>, 552 F.3d 648,

650 (8th Cir. 2008) (citing <u>Youngblood v. Hy-Vee Food Stores, Inc.</u>, 266 F.3d 851, 855 (8th Cir.

2001)).  Dietz sues Fink, Johnson, Nelson, and Griese who were his court-appointed attorneys

during his state proceedings, Doc. 1 at 2, but court-appointed attorneys are not state actors for

purposes of § 1983.  <u>Harkins v. Eldredge</u>, 505 F.2d 802, 803 (8th Cir. 1974) (per curiam).

"[A] private party may be held liable on a § 1983 claim if 'he is a willful participant in

joint action with the State or its agents.'"  <u>Mershon v. Beasley</u>, 994 F.2d 449, 451 (8th Cir. 1993)

(quoting <u>Dennis v. Sparks</u>, 449 U.S. 24, 27 (1980)).  <u>See also</u> <u>Moore v. Shock</u>, 2014 U.S. Dist.

LEXIS 67050, at *9 (E.D. Ark. Apr. 21, 2014) ("Defendants, as private attorneys, cannot be sued

under § 1983 unless Plaintiff can show a conspiracy.") R. & R. adopted by 2014 U.S. Dist.

LEXIS 67052 (E.D. Ark. May 15, 2014).  "[A] plaintiff seeking to hold a private party liable

under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting

of the minds, between the private party and the state actor."  <u>Mershon</u>, 994 F.2d at 451.

16

Dietz's complaint could liberally be construed to allege a joint action between Fink, Johnson, Nelson, Griese, and ERLS, with Judge Rasmussen.[12] Dietz claims that "ex-parte communication with Kolin Fink & the State and judge is obvious and clearly negative without [Dietz] being able to rebut it." Doc. 1 at 4. Dietz also alleges a conspiracy because he sent a copy of his prior lawsuit to Fink, and he believes that Fink told Judge Rassmusen that he blamed child support for his problems. Id. at 5. Dietz further alleges that Fink had a conflict of interest in representing him in his criminal proceedings because Fink practiced family law. Doc. 1-1 at 6. See also id. at 31. He generally claims that all of the attorneys communicate. Id. at 14. He also claims that Fink and Nelson went to high school together and are both active in the National Guard. Id. at 10–11, 13. Dietz further alleges that Nelson and Nelson's father are active in the South Dakota Legislature and that they were "possibly involved in the invasion and introduction of the addictive money maker[,]" video lottery, which Dietz believes is unconstitutional. Id. at 11 (capitalization in original omitted). However, Dietz's complaint has not alleged that there was a mutual understanding or meeting of the minds between Fink, Johnson, Nelson, Griese, or ERLS with Judge Rassmussen or any other state actor. See generally Docs. 1, 1-1. Thus, Dietz has failed to allege willful participation in joint action giving rise to liability against private actors.

---

[12] Dietz's complaint also claims that the alleged conspiracy involved the State Bar of South Dakota, the South Dakota Department of Social Services, and Mottz. See Doc. 1-1 at 10, 16, 19, 34. However, the State Bar of South Dakota, the South Dakota Department of Social Services, and Mottz were not named as defendants. See Doc. 1 at 2; Doc. 1-1 at 2.

### d.    Claims Against Judge Rasmussen and Ohnnan

Dietz sues Judge Rasmussen and Ohnnan in their official capacity for injunctive relief.[13] See supra at 8.  Judge Rasmussen and Ohnnan are employees of the State of South Dakota.  As the Supreme Court of the United States has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)).  Thus, it is a suit against the state itself.  Id.  While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

Although suits against a state for money damages are barred under the Eleventh Amendment unless the state has waived its sovereign immunity, id., "[s]tate officials acting in their official capacities are § 1983 'persons' when sued for prospective relief, and the Eleventh Amendment does not bar such relief." Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997). Dietz does not seek any prospective injunctive relief against these defendants.  He only requests review of the how the Union County Court and the Lincoln County Court did not inquire into his life or civil rights violations and to investigate the negative ex-parte communications that these defendants allegedly had during his criminal trial.  Doc. 1 at 7.  Thus, Dietz's official capacity claims against Judge Rasmussen and Ohnnan[14] fail to state a claim upon which relief may be granted.

---

[13] Granting Dietz leave to amend his complaint to allege individual capacity claims against Judge Rasmussen would also likely be futile because judges are generally immune from suit if the judge had jurisdiction over the party.  Stump v. Sparkman, 435 U.S. 349, 356 (1978).

[14] Dietz claims that Ohnnan's actions violated the Federal Rules of Criminal Procedure Rule 32(c) and (e)(2), Doc. 1-1 at 4, 9, but the Federal Rules of Criminal Procedure "govern the

### e.    Claims Against Miller

Dietz alleges official capacity claims against Union County Prosecutor Miller.  Doc. 1-1

at 2.  "A suit against a government officer in his official capacity is functionally equivalent to a

suit against the employing governmental entity."  Veatch v. Bartels Lutheran Home, 627 F.3d

1254, 1257 (8th Cir. 2010).  Dietz's official capacity claims against Miller are equivalent to

claims against Union County.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its

employees or agents."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  A county

government may be sued only "when execution of a government's policy or custom, whether

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy," deprives a plaintiff of a federal right.  Id.  Dietz makes no allegations regarding Union

County's policies or customs.  Thus, his claims against Miller in his official capacity fail to state

a claim upon which relief may be granted.[15]

---

procedure in all criminal proceedings in the United State district courts, the United States courts
of appeals, and the Supreme Court of the United States."  Fed. R. Crim. P. 1(a)(1).  However,
"[w]hen a rule so states, it applies to a proceeding before a state or local judicial officer."  Fed.
R. Crim. P. 1(a)(2).  Federal Rule of Criminal Procedure 32 does not state that it applies to
criminal proceedings before a state or local judicial officer.  See Fed. R. Crim. P. 32.  Further,
this Court held that Rule 32 does not apply to state criminal proceedings.  Waliezer v. Grupe,
1:15-CV-01318-CBK, 2016 U.S. Dist. LEXIS 15411, at *1–2 (D.S.D. Feb. 5, 2016).
    Dietz also claims that Ohnnan's actions violated United States v. Jones, 957 F. Supp.
1088, 1090, 1091 (E.D. Ark. 1997), which he claims holds that probation officers cannot file
petitions to revoke probation because the authority rests exclusively with the United States
Attorney.  See Doc. 1-1 at 21.  Even if Dietz's interpretation of Jones is correct, he misapplies
the case because Jones involved a criminal proceeding in federal court.  Jones, 957 F. Supp. at
1091.  Dietz's criminal case was in state court, where there was not a United States Attorney
involved in his criminal proceedings.
    [15] Permitting Dietz to amend his complaint to allege individual capacity claims against
Miller would also likely be futile because absolute immunity shields prosecutors "from civil
liability under § 1983 for prosecutorial functions such as the initiation and pursuit of a criminal
prosecution, the presentation of the [government's] case at trial, and other conduct that is

#### f.      State-law Claims

Dietz's complaint could be liberally construed to allege state-law claims for legal

malpractice and fraud as well as for violation of state statutes: SDCL § 23A-27-20, SDCL

§ 22-6-11, SDCL § 16-18-17, SDCL § 16-17-10, SDCL § 32-11-116,[16] SDCL § 20-10-3, SDCL

§ 1-56-11, SDCL § 3-6A-44,[17] SDCL § 53-9-1, SDCL § 53-9-3, SDCL § 53-9-4, SDCL § 53-9-

6, SDCL § 53-4-2, SDCL § 53-4-1, SDCL § 53-4-3, SDCL § 6-1-4, SDCL § 6-1-1, SDCL § 12-

27-34, and SDCL § 15-6-60b.[18]  Doc. 1 at 4–5; Doc. 1-1 at 5, 15, 20, 25, 31, 33, 38, 41–42.

"Ordinarily, an alleged violation of state law does not by itself state a claim redressable

by a § 1983 action.  Mere violation of a state statute does not infringe the federal Constitution.

Only federal rights are guarded and vindicated by § 1983." Williams v. Hopkins, 130 F.3d 333,

337 (8th Cir. 1997) (internal citations and quotations omitted).  This Court need not analyze

whether the plethora of state statutes Dietz's cites to provides a private right of action because

this Court does not have federal question or diversity jurisdiction over his claims.  These claims

arise under state law; thus, this Court does not have federal question jurisdiction over these

claims.

Dietz also has not alleged that this Court has diversity jurisdiction.  Diversity jurisdiction

exists when the parties are completely diverse, and the amount in controversy exceeds $75,000.

28 U.S.C. § 1332(a).  "Complete diversity of citizenship exists where no defendant holds

---

intimately associated with the judicial process." Anderson v. Larson, 327 F.3d 762, 768 (8th Cir.
2003) (citations omitted).

[16] SDCL § 32-11-116 is not a provision in the South Dakota Code.  This Court assumes
that Dietz intends to reference SDCL § 32-12-116.

[17] SDCL § 3-6A-44 was repealed in 2012.

[18] Dietz also appears to allege a state-law claim for false advertisement and fraud against
the Department of Social Services, but the Department of Social Services is not named as a
defendant.  Doc. 1-1 at 35–42.

citizenship in the same state where any plaintiff holds citizenship." OnePoint Sols., LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007) (citation omitted). Dietz, the party seeking a federal forum, bears the burden of demonstrating that the parties are citizens of different states. Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir. 1992) (citation omitted). Dietz has not requested money damages and has not alleged an amount in controversy exceeding $75,000. See Doc. 1 at 7. He also has not alleged that the parties are completely diverse. See generally Docs. 1, 1-1.

Because all of his federal claims are dismissed, this Court declines to exercise supplemental jurisdiction. See 28 U.S.C. § 1367 (noting that district courts may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction"). Thus, Dietz's state-law claims are dismissed without prejudice.

## III. Conclusion

It is therefore ORDERED:

1.  That Dietz's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

2.  That the institution having custody of Dietz is directed that whenever the amount in Dietz's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Dietz's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1) until the $350 filing fee is paid in full.

3.  That Dietz's claims requesting review of practices of the Lincoln County Court and the Union County Court in his proceedings are barred under the Rooker-Feldman Doctrine and are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

4.    That Dietz's remaining claims are dismissed without prejudice under 28 U.S.C.

§§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

DATED December /7, 2024.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE